IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>AUSTIN RYDER SEWELL,<br><br>　　　　　Defendant. | Case No. 25-CR-299-JDR |

**Government's Sentencing Memorandum**

The Court should accept the parties 11(c)(1)(B) plea agreement and sentence Austin Ryder Sewell to 168 months imprisonment, followed by a lifetime of supervised release, in accordance with the range recommended by the parties, and the § 3553(a) factors. A sentence of 168 months imprisonment adequately reflects the seriousness of Sewell's offense, promotes respect for the law, provides just punishment, and protects the public from Sewell's crimes against children.

**Relevant Facts**

Between March – July 2025, Kik submitted over ten CyberTips to the National Center for Missing and Exploited Children for a user at IP address 108.254.143.251, who was sharing videos of child pornography. *See* PSR at ¶¶ 5 – 10. The user at the IP address had several different Kik accounts and usernames, including "maddi_withafatty" and "kitty_kira_3825." *See* Exhibit A. This Kik user was later identified as Austin Sewell. *Id.* at 11. In reviewing Sewell's Kik accounts, agents

uncovered 98 videos and 24 images of child pornography, which included infants and toddlers being sexually abused. *Id.* at 7 – 13; *see also* Exhibit A. Agents also uncovered a plethora of chats between Sewell and other users, indicating Sewell's sexual interest in children, describing that he likes them "pretty young" and that "babies area gray area." *See* Exhibit A. Additionally, Sewell's Kik accounts revealed that he had been creating groups with "no limits" to exchange child pornography and had been inviting others into these groups. *Id.* In reviewing the devices seized during the search warrant of Sewell's residence in July 2025, law enforcement discovered that Sewell had a unique operating system called Tails OS. *See* Exhibit B. This operating system possessed by Sewell, allows a user to hide online activity and leaves no trace on a device's hard drive when the device is shut down. *Id.*

In August 2025, Sewell was charged in a single count Information for Receipt and Distribution of Child Pornography. *See* PSR at ¶ 4. That same month, Sewell pleaded guilty to the Information pursuant to a plea agreement, in which the parties recommend that the appropriate sentence in this case is of no less than 121 months and of no more than 168 months imprisonment, as well as a lifetime of supervised release. *See* Dkt. # 25. Sewell faces a statutory range from five to twenty years' imprisonment. *See* PSR at ¶ 46. His guideline range is 210 to 262 months imprisonment. *Id.* at ¶ 47. The top of end of the range recommended by the parties, 168 months' imprisonment, would require a downward departure.

**Argument & Authorities**

**The 18 U.S.C. § 3553(a) factors warrant a sentence of 168 months of imprisonment.**

A sentence of 168 months imprisonment, followed by a lifetime of supervised release, appropriately accounts for Sewell's history and characteristics, as well as his conduct in this case, which included targeting some of the most vulnerable members of our society—children.

When determining an appropriate sentence, the Court must consider the 18 U.S.C. § 3553(a) factors, including: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. *Gall v. United States*, 552 U.S. 38, 49 (2007).

    a. **Nature and Circumstances of the Offense**

From February 2025 through July 2025, Sewell used online applications to receive and distribute child pornography. Additionally, agents found numerous chats showing that Sewell was creating "no limits" groups and encouraging people to engage in the exchange of child pornography. The nature and circumstances of the offense support a sentence of 168 months' imprisonment.

    b. **History and characteristics of the defendant**

Sewell reports stable childhood and home environment. *See* PSR at ¶ 37. Sewell's employment record indicates that he has the ability to hold down a steady job. *Id.* at ¶ 43. Sewell's background also shows strong ties with his family and the local

community. *Id.* at ¶¶ 37 and 43.

Even with these strong ties and positive attributes, Sewell still chose to victimize children by seeking out, receiving, and distributing child pornography.

### c. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, deter future criminal conduct, and protect the public from further crimes of the defendant.

#### 1. A sentence of 168 months imprisonment and a lifetime of supervised release would reflect the seriousness of Sewell's offense.

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring); *see also United States v. Martinez-Barragan*, 545 F.3d 894, 898 (10th Cir. 2008) ("[T]he length of the sentence reflects the gravity of the crime."). Here, the seriousness of Sewell's crime weighs in favor of a lengthy sentence. Sewell exploited children by receiving and distributing child pornography for his own sexual gratification.

#### 2. A sentence of 168 months imprisonment and a lifetime of supervised release would promote respect for the law.

When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act and its later amendments are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary

4

Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43.

Sewell's actions violated federal law and represented a treatment of children that society justifiably deems abhorrent. A sentence of 168 months imprisonment, along with a lifetime of supervised, release expresses an appropriate level of social condemnation of his crimes.

> 3. *A term of imprisonment of 168 months followed by a lifetime of supervised release would provide adequate deterrence and protect the public.*

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *Id*. The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Sewell's conduct supports a lengthy sentence to protect children in the community—now and into the future.

This Court should also impose a lengthy sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See United States v. Irey*, 612 F.3d at 1208 (11th Cir. 2010) ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). A sentence of

5

168 months imprisonment, followed by a lifetime of supervised release, signals to other adults interested in the exploitation of children that such behavior is abhorrent and will be punished harshly.

**Sex Offender Special Conditions**

When imposing special supervised release conditions, courts must provide defendant-specific reasons why the condition supports and furthers the section 3583(d) factors. *United States v. Koch*, 978 F.3d 719, 725 (10th Cir. 2020); 18 U.S.C. § 3583(d). A "hypertechnical" analysis is not required, *Koch*, 978 F.3d at 725, but courts must generally explain that the special condition (1) is reasonably related to pertinent § 3553(a) factors[1], (2) does not deprive the defendant of liberty greater than reasonably necessary, and (3) is consistent with Sentencing Commission policy statements. 18 U.S.C. § 3583(d).

However, to impose special supervised release conditions that limit or prohibit a defendant's access to constitutionally protected materials, like adult pornography, courts "must justify the condition with compelling circumstances." *Koch*, 978 F.3d at 725-26 ("[C]ase law mandates that the district court engage in an on-the-record analysis of the propriety of all special conditions of supervised release and a particularly meaningful and rigorous analysis when the special condition implicates a fundamental right or interest."). Specifically, to impose a condition that restricts a

---

[1] Specifically, the nature and circumstances of the offense, history and characteristics of the defendant, as well as the need to deter criminal conduct, protect the public from the defendant's future crimes, and to assist in rehabilitation. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D).

defendant's access to "sexually explicit materials involving adults," courts must "(1) identify the rehabilitative, deterrent, or penological purpose of the condition; and (2) balance any such purpose against First Amendment concerns." *United States v. Englehart*, 22 F.4th 1197, 1208, 1210 (10th Cir. 2022).

In this case, the Court may consider the imposition of Special Sex Offender conditions, including a condition prohibiting possessing or viewing videos or visual depictions displaying sexual acts as defined by 18 U.S.C. § 2246(2). (PSR at ¶ 47). The special condition prohibiting possessing or viewing videos or visual depictions displaying sexual acts as defined by 18 U.S.C. § 2246(2) is appropriate and should be applied in this case because of the nature of Sewell's offense, receiving and distributing child pornography, as well as his preferences as evidenced by his chats with others.

First, the nature and circumstances of Sewell's offense and his characteristics require the condition. Not only did Sewell receive and distribute child pornography, but he also had chats with others that were seemingly dedicated to the sexual exploitation of children. Sewell also engaged in sexual conversations with other adults about the rape and abuse of children, appearing to derive sexual gratification from these conversations.

Second, the special condition deters future criminal conduct, protects the public, and assists in rehabilitating the defendant. Sewell's access to adult pornography, and other sexual content involving younger looking individuals may "serve as sexualizing gateway to his consumption of child pornography." *See United States v.*

7

*Koch*, 978 F.3d 719 (10th Cir. 2020).

The need for this condition outweighs the impact on Sewell's First Amendment rights. The impact on Sewell's First Amendment rights is small and targets directly at the relevant issue should Probation recommend that Sewell be prohibited from possessing or viewing videos or visual depictions displaying sexual acts as defined by 18 U.S.C. § 2246(2). This sexual act definition includes specific definitions of sexual conduct, which tailors Sewell's restrictions to that appropriately narrow window necessary to deter and rehabilitate Sewell. This special condition prohibiting possessing or viewing sexual acts seeks to prohibit Sewell's access to material that might inflame his sexual interest in children, or make it difficult for his Probation Officer to restrict his access to illegal child pornography, but no further.

This Court should impose the Special Sex Offender Condition discussed above because of Sewell's behavior in creating chat groups coupled with the child pornography found, create compelling, defendant-and-case-specific circumstances justifying any minimal infringement on Sewell's constitutional rights.

## Conclusion

The Court should accept the plea agreement and sentence Sewell to 168 months of imprisonment in accordance with the parties recommended range, and the § 3553(a) factors.

        Respectfully submitted,

        CLINT JOHNSON
        UNITED STATES ATTORNEY

        */s/ Ashley Robert*
        Ashley Robert, Texas Bar #24086955
        Assistant United States Attorney
        110 West Seventh Street, Suite 300
        Tulsa, OK  74119
        Telephone:  918.382.2700
        Facsimile:  918.560.7939

## Certificate of Service

      I hereby certify that on this 15th day of December, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Tracy Tiernan
*Counsel for the Defendant*


                                         /s/ *Ashley Robert*
                                    Assistant United States Attorney